# IN THE SUPREME COURT, STATE OF WYOMING

# 2026 WY 81

APRIL TERM, A.D. 2026

July 15, 2026

DAVID LEE SMITH,

Appellant
(Defendant),

v.

S-26-0012

THE STATE OF WYOMING,

Appellee
(Plaintiff).

*Appeal from the District Court of Natrona County*
*The Honorable Kerri M. Johnson, Judge*

*Representing Appellant:*

Office of the State Public Defender: Patricia L. Bennett, State Public Defender\*, Kirk A. Morgan, Chief Appellate Counsel.

*Representing Appellee:*

Keith G. Kautz, Attorney General; Jenny L. Craig, Deputy Attorney General; Kristen R. Jones, Senior Assistant Attorney General; Kristine D. Rude, Assistant Attorney General.

*Before BOOMGAARDEN, C.J., and GRAY, FENN, JAROSH, and HILL, JJ.*

\* An Order Substituting Patricia L. Bennett for Brandon Booth was entered on April 15, 2026.

**NOTICE:  This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**HILL, Justice.**

[¶1]    David Lee Smith appeals the order revoking his probation. Mr. Smith argues the district court erred when it determined that his probation violations were willful during the adjudicatory phase of his revocation proceeding instead of the dispositional phase. We affirm.

## ISSUE

[¶2]    Mr. Smith raises one issue, which we rephrase as:

> Did the district court commit plain error when it determined the willfulness of Mr. Smith's probation violations in the adjudicatory phase of the probation revocation proceedings?

## FACTS

[¶3]    In March of 2024, Mr. Smith was charged with felony destruction of property for damaging four storage units. Mr. Smith entered a plea agreement and pleaded guilty. He was sentenced to three to six years imprisonment which was suspended, and he was placed on three years of probation. Among other things, the terms of his probation included not violating any local, state, or federal law, not consuming alcohol, and applying for and successfully completing an Adult Community Corrections (ACC) program.

[¶4]    Mr. Smith was accepted into an ACC program in Casper, the Casper Re-Entry Center (CRC) on May 1, 2025. On May 20, 2025, Mr. Smith signed out of CRC to search for a job but instead consumed alcohol. Upon his return, a breathalyzer showed he had a blood alcohol of .230, and he was written up. Mr. Smith did not claim he consumed alcohol involuntarily on May 20, 2025.

[¶5]    On May 23, 2025, Smith signed out of CRC for an appointment at the Central Wyoming Counseling Center (CWCC). He did not return to CRC at his scheduled return time. When Mr. Smith did not return on time, CRC implemented their "escape protocol" and reported Mr. Smith as an escapee to the Natrona County Sheriff's Office. About one hour later, Mr. Smith contacted CRC which picked him up and returned him to the facility. Upon his return, Mr. Smith again tested positive for alcohol. Mr. Smith reported that during his appointment he had received an injection of medication that caused him to blackout. Mr. Smith was detained, charged, and eventually convicted of escape. On May 30, 2025, CRC terminated Mr. Smith from its program.

[¶6]    The State petitioned the district court to revoke Mr. Smith's probation. The State alleged Mr. Smith violated the terms of his probation by violating state law (escape) and because he was terminated from CRC.

[¶7]    The district court held a probation revocation hearing on December 18, 2025.  At the beginning of the hearing, the court explained the hearing was for an adjudication of the State's petition.  Mr. Smith's counsel informed the court that Mr. Smith did not deny that he was terminated from CRC or that he was convicted of escape.  Instead, Mr. Smith asserted "his failure to comply was not willful, but he wants to have a full contested hearing."  The court, therefore, had the State present its evidence.

[¶8]    Mr. Smith's probation agent while he was at CRC testified for the State.  She explained the protocols at CRC for signing in and out of the facility.  She further explained that if a person does not return when required, the facility will implement its escape protocol which eventually results in CRC reporting the person as an escapee.  In addition to an escape charge, the person may also be terminated from CRC.

[¶9]    She testified that on May 23, 2025, Smith signed out of the facility and did not return at the designated time and was reported as an escapee.  He eventually called CRC and was returned to the facility.  The sheriff's office arrived and detained Mr. Smith.  She further explained that Mr. Smith had a disciplinary hearing on May 30, 2025.  He was terminated on the escape charge, and he was also terminated because he was consuming alcohol.  The probation agent testified that when she questioned Mr. Smith about his actions on May 23, he claimed "he was in blackout" which he believed was related to medication he had been administered at CWCC.  She was unaware of any duress, force, or threat which would cause Mr. Smith to consume alcohol.

[¶10]  Mr. Smith then testified.  He testified that when the medications CWCC gave him began to wear off, he started remembering and tried to get a bus back to CRC.  Mr. Smith asserted that because of the medication, his failure to return was not willful.  When the State asked Mr. Smith if he consumed alcohol that day, he stated he did not remember drinking, but he did remember testing positive for alcohol.  He also testified that he knew drinking alcohol was contrary to the terms and conditions of his probation.

[¶11]  After hearing arguments from the parties on the matter, the court noted that the burden of proof is different in a trial for escape and a probation revocation.  The court stated that based on the probation agent's testimony, "I would find that Mr. Smith did willfully violate his probation for getting convicted of escape in this case or in the court."  The court further stated, "the jury did determine the willfulness of that violation beyond a reasonable doubt; and like I said, this burden is less."  The court also found the State established Mr. Smith violated his probation by knowingly consuming alcohol on May 20, 2025.  The court found, "so it wasn't just the escape charge that got him terminated from CRC.  It was also the alcohol consumption on May 20, 2025."  The court declared that the State had met its burden to show a violation of the conditions of probation and it adjudicated violation of both allegations.

[¶12] The court then asked for the State's sentencing recommendations. The State noted it was unsure whether Mr. Smith was ready to proceed to disposition at that point. Mr. Smith's counsel advised there was no point in waiting. The State then argued the court should impose the underlying three to six year sentence because Mr. Smith failed to take responsibility for his actions. The State also asserted Mr. Smith's position that prescription drugs affected his memory "fails the credibility test." The State argued Mr. Smith showed he was not an appropriate candidate for continued probation because he mixed alcohol and prescription medication.

[¶13] Mr. Smith's counsel asked for a sentence of 156 days in the county jail which would get him to two years of time served and terminate the rest of his sentence. Mr. Smith also directly addressed the court. He testified that he stood by his word that he was given an injection that day, had been trying his best, and had wanted to complete the CRC program.

[¶14] After hearing from the parties, the district court revoked Mr. Smith's probation and re-imposed the underlying sentence of three to six years with credit for time served. The court did not discuss willfulness again in the dispositional phase. Mr. Smith appeals.

## STANDARD OF REVIEW

[¶15] Mr. Smith argues that the district court erred when it analyzed whether Mr. Smith willfully violated the terms of his probation during the adjudicatory phase of the revocation proceedings and not during the dispositional phase. Mr. Smith did not object below. Therefore, the plain error standard applies. *Bazzle v. State*, 2019 WY 18, ¶ 28, 434 P.3d 1090, 1097 (Wyo. 2019) (citations omitted). Under the plain error standard, the defendant must establish: 1) the record clearly shows the incident alleged as error; 2) the district court transgressed a clear and unequivocal rule of law; and 3) the defendant was denied a substantial right resulting in material prejudice. *Id.* (citing *Johns v. State*, 2018 WY 16, ¶ 12, 409 P.3d 1260, 1264 (Wyo. 2018)).

## DISCUSSION

[¶16] We note at the outset that the State urges us to analyze this case under the doctrine of invited error. The State asserts Mr. Smith invited the district court to consider his willfulness in the adjudicatory phase when he informed the court during his opening statement he did not deny he had violated the terms of his probation but instead wished to assert that his failure to comply was not willful. It argues Mr. Smith knew the court intended to hold an adjudicatory hearing but stated affirmatively he only intended to contest willfulness. Thus, Mr. Smith invited the court to make the willfulness determination during the adjudicatory phase. We decline the State's request to apply the invited error doctrine.

[¶17] The invited error doctrine precludes appellate review of errors that a party's "affirmative actions induced, invited, or provoked because such intentional conduct

3

constitutes a species of knowing waiver." *Vaught v. State*, 2016 WY 7, ¶ 34, 366 P.3d 512, 520 (Wyo. 2016) (citations omitted). Waiver is different from forfeiture. *Helms v. State*, 2026 WY 24, ¶ 35, 584 P.3d 428, 441 (Wyo. 2026) (citation omitted). Waiver requires a party to knowingly and intelligently relinquish a right. *Id.* Forfeiture, on the other hand, is the failure to make the timely assertion of a right. *Id.* We have recognized there is sometimes a fine line between positive acts relinquishing a right and the failure to timely assert a right in order to preserve an issue. *Id.*, ¶ 37 (citing *Vaught*, ¶ 35, 366 P.3d at 520).

[¶18] This case is one that demonstrates the fine line between waiver and forfeiture. During his opening statement, Mr. Smith's counsel stated Mr. Smith did not deny that he violated the terms of his probation but instead wished to argue that his failure to comply was not willful. Although it could be viewed, as the State suggests, that Mr. Smith's arguments induced the court to determine willfulness during the adjudicatory phase, the record also can be read as Mr. Smith trying to argue he did not violate his probation conditions. One of the grounds the State relied on to revoke his probation was that Mr. Smith violated the law by committing the crime of escape. Escape is a general intent crime. *Seymore v. State*, 2007 WY 32, ¶ 14–15, 152 P.3d 401, 406–07 (Wyo. 2007), *abrogated on other grounds by Granzer v. State*, 2008 WY 118, ¶ 15, 193 P.3d 266, 271 (Wyo. 2008). Thus, Mr. Smith's counsel may have also been trying to argue that Mr. Smith did not meet the elements of the crime of escape because he did not voluntarily fail to return to CRC.[1] The wording of counsel's arguments likely confused the matter, but we do not find it amounts to an intentional waiver in this instance. Mr. Smith's actions in the hearing do not show he intended to knowingly and intelligently relinquish his right to have willfulness determined in the dispositional phase or forgo the adjudicatory phase. *See Vaught*, ¶ 35, 366 P.3d at 520. Accordingly, we will apply the plain error standard to Mr. Smith's claim of error.

[¶19] In that regard, Mr. Smith argues the district court denied him due process and committed plain error by determining the willfulness of his probation violation during the adjudicatory phase of the revocation proceeding instead of the dispositional phase. With regard to probation revocation cases, this Court has held that due process requires defendants be given a two-part hearing to determine if 1) there are verified facts proving a violation of a condition of probation; and 2) whether in light of a proven violation, the probation should be revoked. *Velasquez v. State*, 2026 WY 11, ¶ 20, 582 P.3d 915, 920 (Wyo. 2026); *see also* Wyo. Stat. Ann. §§ 7-13-302 through -305; W.R.Cr.P. 39.

[¶20] The first part of the hearing, the adjudicatory phase, focuses on whether the probationer violated the conditions of his probation. *Crouse v. State*, 2017 WY 133, ¶ 10, 405 P.3d 216, 219 (Wyo. 2017). If the court finds a violation, it proceeds to the second phase, the dispositional phase. *Id.* In the dispositional phase, the court must "determine

---

[1] Of course, as noted by the district court, Mr. Smith was convicted of escape so such an argument was likely to be and ultimately was unpersuasive.

the appropriate consequences of the probationer's violation." *Id.* In making that determination, "the district court must deliberate not only upon the violation, but also the reasons the conditions were originally imposed and the circumstances surrounding the violation." *Id.* (quoting *Mapp v. State*, 929 P.2d 1222, 1226 (Wyo. 1996)). Whether the probation violation was willful is addressed in the dispositional phase. *Id.* (citing *Sinning v. State*, 2007 WY 193, ¶ 10, 172 P.3d 388, 390 (Wyo. 2007)).

[¶21] The record establishes the district court determined Mr. Smith's violations were willful during the adjudicatory phase of the probation violation proceedings. Thus, Mr. Smith has established the first prong of the plain error analysis. Mr. Smith has also satisfied the second prong of the plain error analysis because we have consistently held the determination of whether the defendant willfully violated the conditions of his probation should be made during the dispositional phase. *Bazzle*, ¶ 33, 434 P.3d at 1098 (citing *Brumme v. State*, 2018 WY 115, ¶ 12, 428 P.3d 436, 441 (Wyo. 2018); *Robinson v. State*, 2016 WY 90, ¶ 20, 378 P.3d 599, 606 (Wyo. 2016)). Accordingly, it is a violation of a clear and unequivocal rule of law for the district court to make its willfulness findings during the adjudicatory phase.

[¶22] Mr. Smith, however, fails to establish the third prong of the plain error analysis, material prejudice. Although it was error for the court to determine willfulness in the first phase, as noted above, the first phase also included a brief discussion of whether Mr. Smith had met the elements necessary to commit the crime of escape. Specifically, the hearing included a discussion of whether Mr. Smith had voluntarily failed to return to CRC. We have recognized that evidence presented during each stage of the probation proceedings might properly relate to the other stage. *Velasquez*, ¶ 23, 582 P. 3d at 921. Here, evidence Mr. Smith voluntarily failed to return was relevant to both the adjudication of the violation of his probation and to a factor weighing in whether his probation should be revoked— whether the violation was willful. *See Crouse*, ¶ 10, 405 P.3d at 219; W.R.Cr.P. 39.

[¶23] The State properly included evidence of the voluntary nature of Mr. Smith's escape and alcohol consumption which led to his termination from CRC during the adjudicatory phase. Mr. Smith's probation agent testified that Mr. Smith did not claim he consumed alcohol by force or under threat on the day of his escape. She suggested his behavior was impacted by taking prescription medication in combination with alcohol, which he was prohibited from using. The State's evidence also included the order filed in Mr. Smith's criminal case stating a jury had convicted him of escape. The State argued this meant the jury necessarily found Mr. Smith's escape was voluntary because it was an element of the crime. In response to the State's evidence, Mr. Smith acknowledged the jury had not accepted he had a medication induced blackout but reiterated that he believed he did not willfully refuse or fail to return to CRC.

[¶24] Under the circumstances, it appears Mr. Smith's testimony and arguments about willfulness had a two-fold purpose, 1) to minimally contest the State's proof of his

probation violations and 2) to ask for some leniency in the consequence to be imposed for his violations. Accordingly, some discussion of Mr. Smith's willfulness was relevant in both phases. Although it was error for the court to make the determination of willfulness during the adjudication phase, to the extent that determination bore on the court's assessment of whether probation should be revoked, its determination in the adjudicatory phase did not undermine the fairness and integrity of the revocation proceedings. To be sure, the court should have delayed a willfulness determination until the second phase of the proceedings or specifically revisited the matter again in the dispositional phase. Even so, the court did not deny Mr. Smith due process when it made the determination when it did.

[¶25] This case is similar to *Bazzle v. State*, 2019 WY 18, 434 P.3d 1090 (Wyo. 2019). In *Bazzle*, Mr. Bazzle challenged his probation violation proceedings because the district court found his probation violations were willful during the adjudicatory phase of the proceeding. *Id.* ¶ 32, 434 P.3d at 1098. Like here, the record was clear the district court had made the determination during the adjudicatory phase, and we found the court erred in making this determination during the adjudicatory phase. *Id.* ¶ 33. Mr. Bazzle argued the premature finding denied him the opportunity to present mitigation evidence and the district court did not truly consider the materials he presented during the dispositional phase. *Id.* ¶ 34, 434 P.3d at 1099. In weighing material prejudice, we noted Mr. Bazzle had the opportunity to address willfulness before the court made its findings. *Id.*, ¶ 35, 434 P.3d at 1099. Additionally, during his dispositional hearings, Mr. Bazzle addressed the court and "offered evidence regarding the reasons for his actions." *Id.* We held that the record did not establish that Mr. Bazzle had been materially prejudiced by the premature conclusion. *Id.*

[¶26] Mr. Smith cannot show material prejudice for similar reasons. At the beginning of the adjudicatory phase, he acknowledged he had been terminated from the CRC and he had been convicted of escape. He asked the court to find his violations were not willful. He maintained that he was in a blackout from his medication when he failed to return as scheduled. Like in *Bazzle*, the district court made its finding of willfulness only after hearing from Mr. Smith. Mr. Smith had an opportunity to present—and did present— information regarding willfulness and the court considered that information.

[¶27] During the dispositional phase, the State argued that Mr. Smith had not been taking his opportunities for treatment and probation seriously because he voluntarily mixed alcohol with prescription medications. It emphasized Mr. Smith's probation agent believed probation was no longer appropriate. After the court asked if she would like to provide additional information, the probation officer offered that Mr. Smith needed a long-term plan where he has support and structure around him to be successful.

[¶28] The court then invited Mr. Smith to provide argument. Although he did not offer further argument or evidence to show his probation should not be revoked because his

6

violations were not willful, trial counsel asked for a limited sentence of imprisonment in the county jail. Counsel did not argue Mr. Smith was still a good candidate for probation. Indeed, in less than the month Mr. Smith was at CRC, he had violated his probation multiple times. Mr. Smith again spoke directly to the court and apologized for drinking but stood by his statement that he had received medication the day of the escape. Thus, he maintained his violations were not willful again in the dispositional phase.

[¶29] Like *Bazzle*, although the willfulness determination was made in the wrong phase, the court did not impose its sentence until after hearing Mr. Smith's statement about his lack of willfulness and after considering arguments from both parties. "Both due process and the provisions of Rule 39 require at least some inquiry into the reasons behind a violation, and the court has an obligation to determine what consequences should be had in light of the various factors it must consider." *Velasquez*, ¶ 27, 582 P.3d at 922 (citing W.R.Cr.P. 39(a)(5); *Bazzle*, ¶ 26, 434 P.3d at 1097). Overall, the court did hear Mr. Smith's asserted reasons for his violations and did not wholly dispense with the dispositional phase of the proceedings. *See Velasquez*, ¶¶ 24–27, 582 P.3d at 921 (finding prejudicial error where the district court dispensed with the dispositional phase in the defendant's third probation revocation proceeding). Based on the record, we find the court fully considered Mr. Smith's willfulness argument before imposing his sentence.

[¶30] Moreover, the court also found Mr. Smith violated his probation by drinking on May 20, 2025, which was another reason he was terminated from CRC. Thus, there were additional probation violations that Mr. Smith did not contest, and he presented no argument that those violations were not willful. Under these circumstances, we find no material prejudice. Because we find no material prejudice, we find no plain error.

## CONCLUSION

[¶31] Mr. Smith has not established plain error. We affirm.